## PETTERS & CO. v. SCHOOL DIST. NO. 5, ALBANY COUNTY*

(No. 1361; November 1, 1927; 260 Pac. 678)

(Rehearing Denied January 31, 1928)

Set-Off and Counterclaim—Defenses to Non-Negotiable Instru-
ments—Statutory Construction—Defenses "As Allowed by
Law" Defined—Schools and School Districts—School War-
rants—School Warrants Non-Negotiable—Assignee of School
Warrants Take Subject to Defenses—Misappropriation of
School Funds on Deposit as Set-Off—Assignee of School
Warrant.

1.  Under Code Civ. Proc. (Laws 1869, c. 75) § 33, providing
    action by assignee shall be without prejudice to set-off or
    other defense existing "at time of, or before notice of
    assignment," debtor on assigned non-negotiable instru-
    ment was not affected by assignment until he had notice
    thereof and could set up as against assignee any defense
    acquired before notice that he could have set up against
    assignor, if choses of action had not been assigned.

2.  The term "now allowed" within Code Civ. Proc. (Laws
    1873, c. 1) § 23, providing that action by assignee shall
    be without prejudice to any set-off or other defense now
    allowed, referred to Laws 1869, c. 75, § 33, as the law
    prior to adoption of section 23.

3.  Under Comp. St. 1920, § 5580, providing right of set-off,
    counterclaim, and defense "as allowed by law" shall not
    be impaired, words "as allowed by law" mean taking
    into consideration condition of the law on the subject
    when the statute was adopted and referred to Laws 1869,
    c. 75, § 33, and Code Civ. Proc. (Laws 1873, c. 1) § 23.

4.  A school district warrant, being in the same class as city
    warrants, is a non-negotiable instrument.

5.  A school district warrant being non-negotiable instrument,
    assignee thereof acquires no greater rights against debtor
    than those of assignor against it at time debtor received
    notice of the assignment.

6. Where a school warrant was made payable to a bank and sold by it to an innocent purchaser for value, in purchaser's suit thereon against school district, misappropriation by bank's officer of school funds on deposit in bank, after assignment of warrant to plaintiff, and prior to school district receiving notice thereof, *held* proper set-off to be pleaded in answer.

*See Headnotes: (1) 5 C. J. p. 963 n. 20, 28; p. 965 n. 30; 34 Cyc. p. 744 n. 58; p. 746 n. 65, 69; p. 747 n. 72, 73, 76; p. 748 n. 78; (2) 34 Cyc. p. 744 n. 58; (3) 34 Cyc. p. 744 n. 58; (4) 35 Cyc. p. 985 n. 34, 36; (5) 35 Cyc. p. 985 n. 35; (6) 34 Cyc. p. 747 n. 74.

APPEAL from District Court, Albany County; VOLNEY J. TIDBALL, Judge.

Action by Petters & Co. against School District No. 5, Albany County, Wyo. From a judgment for defendant, plaintiff appeals. Rehearing denied.

*Kinkead, Ellery & Henderson,* for appellant.

The Court erred in permitting the filing of an amended answer after verdict had been directed, said answer not conforming to the evidence at the trial; assuming that the warrant was open to defenses, no defenses, set-off or counterclaim can be urged unless liquidated at the time of assignment; the right of set-off and counterclaim was cut off, since it came into existence long after the assignment of the warrant, Secs. 5580, 5661, 5664 C. S.; Kraus v. Greenfield, (Ore.) Ann. Cas. 1914 B, p. 116; 24 R. C. L. 392; Johnson v. Co., (Okla.) 103 Pac. 638; Y. M. C. A. Co. v. Bank, 46 L. R. A. 787; Annan v. Houck, 45 Am. Dec. 133. A claim to be available against an assignee must be liquidated at the time of assignment; the following authorities define the word "liquidate": Words & Phrases (2nd) Vol. 3 and cases cited. The set-off must be liquidated and ascertained beyond dispute at the time of the assignment; Frick v. White, 57 N. Y. 103; Allgoever v. Edmunds, 66 Barb. 579; Wells v. Stewart, 3 Barb. 40; Martine v. Willis, 2 E. D. Smith 524; Martin v. Kurtz-

miller, 37 N. Y. 396; Gildersleeve v. Burrows, 24 Oh. St. 204; 5 C. J. 963; Graves v. Woodbury, 40 A. D. 207; Trammell v. Worrell, (Tex.) 260 S. W. 1062; Jordan v. Bank, (N. Y.) 30 Am. Rep. 322. Only such defenses as are inherent in the warrant and not collateral can be urged. Bank v. Co., (N. C.) 84 S. E. 1006; Y. M. C. A. Co. v. Bank, supra; Trust Co. v. Shufeldt, 87 Fed. 669; 3 R. C. L. 1046; 8 C. J. 389; Mining Co. v. Goodwin, (Colo.) 223 Pac. 58; Joyce, Comm'l. Paper (2nd Ed.) Vol. 2, 1263; Bank v. Texas, 22 L. Ed. 295; Pusey v. Hanssen, 279 Fed. 494; Davis v. Noll, 45 A. S. R. 841; Hall v. Wells, (Calif.) 141 Pac. 53. Set-off and counterclaim as a defense were cut off since the alleged misappropriation occurred long after the assignment of the warrant. Stadler v. Bank, (Mont.) 56 Pac. 111; Davies v. Newton, 28 Ky. 89; Mead v. Gillett, 19 Wend. 397; Norton v. McCarthy, 30 N. Y. S. 1057; Beecher v. Co., (N. Y.) 125 N. E. 832; Trust Co. v. Rosenbuch, (Mass.) 131 N. E. 858; Hight v. McCulloch, (Tenn.) 263 S. W. 794; Koegel v. Trust Co., (Mich.) 76 N. W. 74; Fuller v. Steiglitz, 27 Oh. St. 360; Whims v. Grove, 1 Oh. C. C. 98; U. S. Trust Co. v. Mendelson, 205 N. Y. S. 100. The alleged misappropriation by the bank officer was insufficient to constitute a valid set-off. Bank v. Armstrong, 38 L. Ed. 470; Weissburg v. Bank, (Pa.) 131 Atl. 181; Wilkinhale v. Herstein, (Okla.) 149 Pac. 1109; Brown v. Bank, (Va.) 17 A. & E. 119; Schumacher v. Co., (Minn.) Ann. Cas. 1913 C, 1115.

*Sullivan & Garnett,* for respondent.

The warrant in suit is not a negotiable instrument; appellant, as assignee of the payee, cannot be classed as an innocent holder of a negotiable paper; its right to reconvey is subject to every defense existing against the original payee. Western Tub. Co. v. Dist., 5 Wyo. 185; Barker Co. v. Co., 178 Pac. 764; Bank v. District, (N. D.) 48 N. W. 363; Kellogg v. Dist., (Okla.) 74 Pac. 110; Bank v. Dist.,

(Kan.) 178 Pac. 202; Bank v. Whisenhunt, (Ark.) 127 S. W. 968; State v. Melcher, (Nebr.) 127 N. W. 241; Bank v. School Twp., 44 N. W. 1002; Boardman v. Hayne, 29 Ia. 339; Oppenheimer v. School Twp., (Ind.) 72 N. E. 1100; Wall v. Co., 26 L. Ed. 430; Bank v. Bank, 155 Pac. 561. Until notice of the assignment, plaintiff was bound by acts of its assignor, and defendant was entitled to assert any defense coming into existence prior to notice of assignment; 5580 C. S.; 5 C. J. 934; Stebbins v. R. R. Co., 2 Wyo. 71; Callahan v. Edwards, 32 N. E. 482; Shade v. Creviston, 93 Ind. 591; Swan v. Craig ,(Nebr.) 102 N. W. 471; Ranch Co. v. Land Co., 64 Pac. 1097; Vann v. Marberry, (Ala.) 14 So. 273; Weinwick v. Bender, 33 Mo. 80; Hellems v. Rossell, 256 Fed. 606; 2 Pomeroy Eq. Juris. 1415; Bridge Co. v. Boston, 88 N. E. 1089; Gardner v. Bank, 39 Oh. S. 600. The effective date of assignment is the date of notice; defense referred to came into existence two months prior to notice; the warrant was unlawfully issued; Western Tube Co. v. Dist., 5 Wyo. 185; Bank v. Dist., 238 S. W. 630; Nashville v. Ray, 22 L. Ed. 164; 5580 C. S. The powers of school district boards are limited by law, 2239-2240 C. S.; only such powers as are granted may be exercised, Bank v. Dist., (Ark.) 238 S. W. 630; Board v. Fudge, (Ga.) 62 S. E. 155; the misappropriation of school district funds by the bank is a defense which came into existence prior to notice and is available, 5580 C. S.; Whitsett v. Bank, 119 S. W. 999; the deduction of February 9th, 1923, depleted the assets of defendant in a sum equal to the warrant, and defendant is entitled to a set-off on account of said deduction, which may be urged to assert that set-off to plaintiff's action, 5580 C. S.; Note 46 L. R. A., p. 794; 34 Cyc. 625. Set-offs are defined by statute, 5664 C. S. The distinction between a set-off and counterclaim is that the former exists independent of plaintiff's claim, but the latter must arise out of the same transaction set up by plaintiff, 5661 C. S.; this distinction is observed quite gen-

erally by the authorities; the transferee of an overdue note takes it subject to every equity and defense, including set-off, to which it was subject in the hands of the payee. Baker v. Kinsey, 41 Oh. St. 403; Wyman v. Robbins, 51 Oh. St. 98; Norton v. Foster, 12 Kans. 44. The Series C warrants and the warrant in suit represent the same indebtedness; the deduction of February 9th ..s made on account of one of them and is sufficiently connected with the subject of the action to be a proper counterclaim; respondent's amended answer was filed for the purpose of including the two defenses of counterclaim, in other respects the amended answer was the same as the original. Amendments in furtherance of justice are permissible, 5707 C. S.; Bissinger v. Weiss, 27 Wyo. 1. Plaintiff was bound to inquire into the character of the warrant and the purpose for which it was issued. The presumption follows that plaintiff relied upon the re-purchase agreement given by the bank rather than the validity of the warrant in suit. The findings of the trial court are supported by the record and the equities are with the defendant.

Before POTTER, Justice, METZ and RINER, District Judges.

METZ, District Judge.

This is an action by Petters & Company against School District No. 5 of Albany County, Wyoming, to recover upon one school warrant No. 193 dated September 29, 1922, in the sum of $7,181.31, issued by order of the School Board and made payable to the First National Bank of Rock River, Wyoming.

This warrant was duly assigned by the Bank to Petters & Company on October 13, 1922, together with some city warrants of the Town of Rock River, Wyoming, which were involved in Case No. 1351, Petters & Company v. Town of Rock River, 260 Pac. 674, this day decided by this court.

The petition of the plaintiff alleges ownership of warrant in plaintiff, presentation of same to defendant for payment, demand for payment, that same is due and unpaid, and prayer for judgment for $7,181.31 and interest at 6 per cent from date of warrant.

The answer, including amendments, sets up a number of defenses that have become immaterial under the evidence and need not be discussed; however, a pleaded defense that the warrant sued on was not a negotiable instrument, and that the plaintiff took the same only as an assignee, and subject to any defenses the defendant might have as against the Bank, the payee named in the warrant, is strongly relied on, and must be considered. It also alleged, in a separate paragraph but part of the single defense pleaded, payment to the assignor on February 9, 1923. An amended answer appears to have been filed which averred in addition to the above that before notice to the defendant of said assignment of the warrant sued on the assignor bank appropriated from funds of defendant on deposit therein the sum of $7181.31 in full discharge of the indebtedness evidenced by said warrant.

A demurrer to this answer was overruled; and a reply filed alleging that an affidavit and certificate as to legality of warrant had been executed by defendant, that plaintiff relied thereon, and purchased the warrant in good faith and for value and that defendant is estopped from questioning its validity. At the close of the evidence each side moved the court to direct a verdict in its favor, and the court, on May 25, 1925, directed a verdict for the plaintiff in the sum of $7818.31. But on June 3, 1925, the defendant filed a motion to set aside the verdict and enter judgment for the defendant. On September 12, 1925, the court allowed a second amended answer to be filed setting up payment, and also alleging that the First National Bank, the payee of the warrant, had unlawfully appropriated $7181.31 from the defendant's funds on deposit with said

bank; that this unlawful appropriation of defendant's funds by the bank occurred prior to notice to defendant of the assignment of said warrant to plaintiff; and that defendant is entitled to have the same set-off against and in the sum of said warrant.

To that amended answer the plaintiff refiled its reply; and on September 12, 1925, the court entered its order, findings and judgment on the "Motion of defendant for judgment notwithstanding the verdict" as follows:

"Now, at this day, the above entitled cause having previously come on for hearing upon the motion of the defendant heretofore filed herein to set aside the verdict of the jury heretofore rendered in the above-entitled cause, and to enter judgment in favor of the defendant, and the parties hereto having duly appeared by their respective attorneys; and the Court having heard the arguments of counsel upon said motion and the briefs filed by the parties hereto upon said motion, and having taken the same under advisement and being now fully advised of and concerning the premises, finds that the warrant in suit was a valid obligation of the defendant and was lawfully held and owned by the First National Bank of Rock River; that said warrant was assigned for value by the First National Bank of Rock River to the plaintiff on or about October 13th, 1922; that thereafter and, to-wit: on or about February 9th, 1923, the said First National Bank of Rock River made an unauthorized· appropriation of the funds of the defendant from its open checking account in said bank, as evidenced by an entry on the books of said bank, in the amount of $7,181.31, being the face amount of the warrant in suit; that neither at said time nor until on or about April 9th, 1923, was notice of said assignment of said warrant to it given by the plaintiff to the defendant; and that because of said unauthorized appropriation before notice of said assignment, plaintiff is not entitled to recover, and; IT IS ORDERED that said motion of the defendant to set aside the verdict of the jury and enter judgment in favor of the defendant be and the same is hereby sustained. IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that the plaintiff

take nothing by this action and that the defendant have and recover of and from the plaintiff its costs and charges in this behalf expended, in the sum of $.................., and that it have therefor execution. To which rulings, findings, judgments and orders of the Court and each of them, the plaintiff is given an exception. Done in open court this 12th day of September, A. D. 1925.''

Plaintiff duly filed and served notice of appeal and the record, including a transcript of the evidence, together with briefs of counsel, are now before this court for consideration, the cause having also been heard upon oral argument.

Briefly stated, the main facts in the case are as follows:

Several years prior to the issuing of the warrant No. 193 sued upon, the school district had issued a number of warrants to school teachers, supply men, etc., for running expenses. These warrants were numbered 1 to 40 inclusive and amounted to $4,728.11, and will be referred to here, as in the record, as Series ''A'' warrants. These warrants were all in the bank's possession and issued in 1920.

Another group of warrants were long outstanding and in the possession of the Bank, being numbered 41 to 93 inclusive and issued in 1921. They, (41 to 93), less warrants 83 and 86 are known as Series ''B'' and amounted to $6,128.00. Warrant No. 83 was for $1000 and warrant No. 86 was for $150.00. Some of the last warrants issued (prior to the warrant in suit) are known as Series ''C'' and included all warrants from No. 93 to 138, and also included No. 83 and No. 86, which were abstracted from Series ''B'' and this series amounted to $7,181.31. Thus it will be seen that Series ''C'' total the exact amount of Warrant No. 193, in suit.

The Series ''C'' warrants were mostly issued the latter part of 1921 and first quarter of 1922 and had been paid by check, by Eykyn, the District Treasurer and were in

his possession and had not been in the bank. The Series "A" and "B" warrants were from one to two years older than the "C" warrants, and the Series "A" and "B" warrants were in the bank and outstanding obligations of the district.

On April 8, 1922, Eykyn went to the bank, and having with him the Series "C" warrants, he drew a check on the District fund for $4734.91 payable to the Bank and took up the Series A. warrants, and they were turned over to him.

It was then decided on suggestion of Butler, the bank Cashier, that it would be better to have the bank hold later warrants, and Series "C" being later in time were exchanged for Series "B" as follows: warrants No. 83 and No. 86 were abstracted from the "B" series and added to the "C" series, making the "C" series total $7181.31, and Eykyn turned the "C" series to the bank in exchange for the "B" series; thus the district recovered the "A" warrants by paying cash and the "B" warrants in exchange for the "C" series.

Peace and harmony prevailed then until in September, when the bank decided it was time the "C" warrants were being looked after, so the district, on Butler's request, issued No. 193 and Eykyn took it to the bank and exchanged it for the Series C warrants which were turned over to Eykyn. After this last trade was made the district had collected in all its warrants held by the bank, excepting No. 193.

On October 13, 1922, Butler for the bank sold Warrant 193 to the plaintiff. Then Butler asked Eykyn to bring in the series "C" warrants to the Bank as he had forgotten to figure the interest on them in their settlement when the exchange was made. Eykyn did not bring them in and so Butler in December went out to Eykyn's ranch and talked Eykyn into turning the Series C warrants, totaling $7181.31 over to him for the purpose of figuring the inter-

est, which he contended had not been done. Butler, instead of figuring interest, took these C warrants and placed them in the bank's assets and the books showed the $7181.31 of warrants on the warrant register as belonging to the bank.

In January, 1923, the County Treasurer sent a check for $7800.00 to the bank made payable to the school treasurer to be deposited to the School District account in the Bank; Butler deposited the check to the credit of the school district, but never notified Eykyn of the receipt of the money. The County Treasurer failed to notify Eykyn of the remittance. By a series of fraudulent book entries in the bank, the sum of $7181.31 was taken unlawfully from the District's bank account. This occurred about February 9, 1923. Eykyn, about the 1st of March, 1923, learned of the money being sent to the bank by the county for the school district and he went to the bank and called for warrant 193 and was told by Butler that the bank did not have the warrant, and on March 28, 1923, Eykyn made out a check on the bank for $7181.31 payable to the bank for the warrant 193, but forgot to sign it. Butler took the check, Eykyn not knowing he had not signed it nor that $7181.31 had been unlawfully taken from the district's bank account.

Then, to make matters worse, the bank failed on April 11, 1923, and the receiver of the bank some time later returned the unsigned check for $7181.31 and the series "C" warrants to Eykyn, but of course could not turn over the $7181.31 taken from the district's bank account by the bank or Butler. On April 19, 1923, the plaintiff notified the defendant that it held warrant No. 193.

Thus it will be seen that the plaintiff owns warrant No. 193 and paid a valuable consideration therefor, that the defendant was paid in full by the bank for said warrant when it took the series "C" warrants in exchange; that the bank assigned the warrant No. 193 to the plaintiff

October 13, 1922; that the bank misappropriated $7181.31 of the District's funds February 9, 1923; that the district attempted to pay the bank for warrant 193 on March 28, 1923; that plaintiff held the warrant No. 193 on April 19, 1923.

From the above statement of facts the question before this court is:

Can the payor of a school warrant, a non-negotiable instrument, when sued thercon by the assignee thereof, successfully plead as a set-off the misappropriation of its funds, by the payee, and assignor of said warrant, which occurred subsequent to the assignment and prior to notice of the assignment being given the maker of said warrant? It may not be out of order at this time to state that after searching through a multitude of decisions in addition to the voluminous list of authorities cited in the briefs of counsel, we have been unable to find a case where the facts were the same as in this case, and under a statute worded like ours, and this is the first time this question has ever been before this court.

It is contended in the brief and was orally argued on behalf of appellant, plaintiff below, the assignee of the warrant in question, that the authorities supporting defendant's contention as to the right of set-off and the court's judgment allowing it are usually based upon a statutory provision specifically allowing a set-off in an action by an assignee of a non-negotiable cause of action existing before the debtor had notice of the assignment. And in that connection it was further argued that under the statute of this state not containing any such specific provision, a different rule must prevail. But as will presently be seen our first procedural statute contained such a provision allowing set-off and other defenses against an assignee existing before the debtor's notice of the assignment, which was superseded by the words now found in the statute, taken from Ohio.

But we understand the rule at common law to have been that the assignee of a non-negotiable cause of action took it subject to any equities existing between the assignor and the debtor up to the time that the latter had notice of the assignment, and that this included the right of set-off. Cavendish v. Geaves, 24 Beavan 163, 53 Eng. Reprint 319. And we understand further that the code provisions with respect to set-off made no substantial change in the law except that it allowed an action brought directly by the assignee instead of by the assignor for the benefit of the assignee, and except that under the code a judgment may be set off, which was not permissible at common law.

Thus it is said in one of the earliest books discussing the Ohio Code, from which state our code of civil procedure was principally taken, 1 Nash. Pl. & Pr., 218, after defining the statutory provision authorizing the pleading of a set-off, viz: that it can only be pleaded in an action founded on a contract, and must be a cause of action arising upon a contract, or ascertained by the decision of the court:

"It will thus be seen that set-off remains as it always was, with the single exception of a claim or cause of action, ascertained by the decision of the court."

Under the New York Code, which contained a specific provision saving the right of set-off existing at the time of or before notice of assignment, it was said in Beckwith v. Union Bank, 5 Selden (9 N. Y.) 211:

"Section 112 of the Code of 1849 (containing the provision "existing at the time of or before notice of assignment") was, we think, not intended to change the substantial rights of the parties, but only to introduce such alterations in the mode of protecting them as were necessary by the provisions of Sections 111 and 113, which require in most cases the real party in interest to be the plaintiff. The first branch of the section will have its full and appropriate meaning if we regard it as providing that

'in the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defense existing at the time of or before notice of the assignment,' which would have been available to the defendant had the action been brought in the name of the assignor. In other words, the provision is that the substantial rights of the defendant shall not be affected by the substitution of the assignee as plaintiff in place of the assignor.''

Ohio had a statute on set-off before its Code of 1853 was adopted. Beesley v. Crawford, 19 Ohio 126. And that, without a specific provision covering the fact of notice of the assignment, the law, before and after the adoption of the Code in Ohio, protected the right of set-off of the debtor up to the time of such notice, is shown by Ohio decisions. Thus it was said by Chief Justice Thurman in Follett v. Buyer, 4 Oh. St. 587:

''When an over-due or non-negotiable note is assigned, the assignee takes it subject to all the equities existing between the payee and the maker; and hence it is competent for the latter, notwithstanding the assignment, to show that it was obtained by fraud, or without consideration, or that, before he received notice of the assignment, it had been paid or otherwise discharged. So, too, he may set off any liquidated demand which he held against the payee when he first obtained information of the assignment. * * * ''

And that is quoted as continuing to have been the law in Ohio in a Circuit Court decision in 1911; Bonding Co. v. Fish, 18 Oh. C. C. Rep. (N. S.) 534. That such is the law is also stated in Phillips on Code Pleading, Section 254:

''It is a general principle of law, that the assignment of a non-negotiable thing in action does not affect any right of set-off, or defense, existing at the time of the assignment, or before notice thereof. And the change in the practice introduced by the new procedure, requiring the

assignee of a right in action to sue thereon in his own name has not affected the rights of the parties in this regard; the debtor may, now as before, in an action by an assignee, set up any defense or counter-demand existing against the original creditor at the time of the assignment, or acquired after the assignment, and before notice thereof."

The provisions of our statute, with reference to a suit by an assignee of a non-negotiable cause of action and saving the rights of defense, including set-off, are in some respects peculiar to Wyoming, as only one State, Ohio, has our exact statute on this subject; though Kansas and Oklahoma have a statute quite similar. While not wishing to unduly extend this opinion, we will mention a few of the state statutes on the subject. Our present statutes, Sec. 5664, Comp. Stat. 1920, provide:

"A set-off can only be pleaded in an action founded on contract, and must be a cause of action arising on contract, or ascertained by the decision of a court."

Section 5580: "An action must be prosecuted in the name of the real party in interest, * * * but when a party asks that he may recover by virtue of an assignment, the right of set off, counter-claim and defense, *as allowed by law shall not be impaired.*"

Ohio: Throckmorton's Code 1926; Sec. 11241; same as Wyoming. Comp. Stat. 1920, Section 5580.

Missouri: Sec. 8161, Laws 1889: "Defendant shall be allowed every just set off or other defense which existed in his favor at the *time* of his being *notified* of such assignment."

Illinois: Sec. 18, Chapter 110, Hurd's Illinois Statutes: "There shall be allowed all just set-offs * * * *before notice* of such assignment shall be given the defendant."

Alabama: 1923 Code, Section 5699: "Action * * * subject to any defense the debtor, etc., had against payee, etc., *previous to notice* of assignment."

Colorado: Code Civil Procedure, 1908, Section 62: "The action by the assignee shall be without prejudice to any set off or other defense existing *at the time of, or before* notice of assignment."

Oklahoma: Compiled Statutes 1921, Section 210: "The assignee shall be without prejudice to any set off or other defense, *now allowed.*"

Kansas: 1909 Statutes; same as Oklahoma.

Iowa: "Suit shall be without prejudice to any set off or other defense, existing *before* notice of the assignment."

Nebraska: Compiled Statutes 1922, Section 8527: "An action * * * shall be without prejudice to any set off or other defense existing between the original parties."

Nevada: Revised Laws, Section 498: "May plead set-off or other defense existing *at time of or before* notice of assignment."

California and Oregon: Same as Nevada.

Washington: Statute provides: "Demand must exist *at time of and before* notice of assignment."

Tennessee: Shannon's Code 4639, Section 4: "May set off * * * any equities between the defendant and original party under whom the plaintiff claims, which by law attached to the demand in the plaintiff's hands." Nearly every other state in the Union has a statute or set-off nearly identical to one of those just cited.

The Wyoming Justice Court Procedure provides, in Section 6486, Comp. Stat. 1920, under set-off: "Any demand against the assignor, belonging to the defendant, in good faith, before notice of such assignment may be set off against the plaintiff." This section was adopted in 1871 and is section 23, chapter 71, Compiled Laws 1876 and has remained in its original form through successive compilations down to the present time. The legislative history of our law on assignment with relation to set-off has not been as free from change in phraseology as the similar section in the Justice Code above cited.

The first Territorial Legislature in 1869 adopted a code of civil procedure. Section 33, page 519, Laws of 1869, provided:

"In the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defense, *existing at the time of, or before notice of assignment.*"

The Third Legislative Assembly in 1873 established a new code of civil procedure to take effect in March, 1874, and this code provides in Section 23:

"In case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defense *now allowed.*"

This part of the code remained unchanged until 1886, when the Ninth Legislative Assembly adopted a new civil code, wherein we find Section 46, which reads as follows:

"An action must be prosecuted in the name of the real party in interest.  *  *  *  but when a party asks that he may recover by virtue of an assignment, the right of set-off, counterclaim and defense, *as allowed by law,* shall not be impaired."

And legislatures for the past forty years have not tampered with this part of the Civil Code, and today this provision appears as section 5580 in our Compiled Statutes.

From an examination of the statutes of the different states and from the few above cited, it is interesting to note in how many ways the legislature chose to enact the same rule of law, only a few of them using exactly the same phraseology. On examining the different state statutes it will be found that some states have never changed the wording of that part of the statutes relating to assignments in connection with set-off, while other states have made numerous changes in the manner of expressing the legislative intent.

Most of these changes have come from a state adopting a Civil Code in whole or in part from a sister state. Because of the fact that nearly every state in the Union has

a law providing in effect that an assignee takes subject to a set off or defense existing prior to notice to debtor of the assignment, the changing of codes or adoption of new ones has not worked any material change in the law on the subject throughout the United States.

Ohio is one of the states that has changed the phraseology of its statute on this subject in the same manner that Wyoming did in 1873 and 1886.

Our law on the subject, as adopted in 1869, was exactly the same as the code then in New York. Voorhies' Code, 9th Rev. Ed., 1868, Sec. 112, page 115. But it was probably adopted by our legislature from the code of Dakota, which territory had apparently adopted the New York code, since it is well known that a large part of Wyoming, especially the eastern half, was a part of Dakota before its boundaries as a separate Territory were established by Congress, and during the latter part of the period that it belonged to Dakota the eastern counties then known as Laramie and Carter were established as a part of a judicial district of Dakota with a provision for the holding of a district court at Cheyenne. And that view is rather indicated by the fact that said section 33 of the law of 1869 was the only provision of the chapter subdivision containing that section which was not taken from Ohio.

Thus it is apparent that we must construe each of the three sections mentioned, to-wit: Section 33, page 519, Laws of 1869: "The action by the assignee shall be without prejudice to any set-off or other defense existing *at time of, or before notice of assignment."* Section 23, Civil Code of 1873: "The action by the assignee shall be without prejudice to any set-off, or other defense *now allowed,"* and that part of section 5580, Wyoming Compiled Statutes 1920, "The right of set off, counter claim, and defense, *as allowed by law* shall not be impaired," and ascertain what the law was, after the adoption of each of the above

mentioned provisions and while it was in force. We will construe them in the order of their passage and adoption.

Section 33 of Civil Code 1869, means that the debtor on an assigned non-negotiable instrument is not affected by the assignment until he has notice thereof, and he may set up as against the assignee, any defense acquired before notice, that he could have set up against the assignor if the chose in action had not been assigned, and was being sued on by the original payee and assignor. The authorities are practically unanimous in sustaining the above construction of similar statutes throughout the United States. Stebbins, Post & Co. v. U. P. R. R., 2 Wyo. 71; First Nat. Bank v. Nye County, 38 Nev. 123, 145. Pac. 932; 5 C. J. 963; First Nat. Bank v. Lewis, 57 Colo. 124, 139 Pac. 1102.

We next come to section 23 of the Civil Code of 1873, which provides, "that the action by the assignee shall be without prejudice to any set off, or other defense *now allowed.*" It is necessary to determine what the words "now allowed" mean, taking into consideration the condition of the law on this subject when said section was adopted. The words "now allowed" could not refer to any other law than our own, to-wit: Section 33, Laws of 1869, which was the law prior to the adoption of Section 23, Laws 1873, and so remained unless changed by the provisions of the new code. But the defined right of set-off was the same in the codes of 1869 and 1873. L. 1869, Sec. 106; L. 1873, Sec. 95. And also in the Code of 1886, now in force. Comp. Stat. 1920, Sec. 5664.

This question of construing the intent and meaning of the words "now allowed," in the corresponding section of the Ohio statute, was discussed by Nash in his work on Pleading and Practice, 4th Ed. (1873), Vol. 1, page 220. He said:

"It will be seen that no defense or set off can be allowed against an assignee or indorsee, in favor of the defendant other than what was *allowed by the law as it stood when*

*the Code was adopted. The words 'now allowed' refer to
the law as it then was.* Hence it becomes important to as-
certain what *the law then was."* (Italics ours.)    See also
McMann v. Wilcox Oil & Gas Co., (Okl.) 250 Pac. 780,
where it was held that the words "now allowed" referred
to the law of Kansas as it existed when Oklahoma adopted
the Kansas Code.

From what we have said before it is apparent that the
law then was, in an action by an assignee, that the de-
fendant could set up as a defense any set-off or defense
existing against the assignor at the time of or *before notice*
of the assignment.

We now come to Section 5580, Comp. Stat. 1920, adopted
in 1886 (L. 1886, Ch. 60, Sec. 46), which provides: "The
right of set-off, counter claim and defense *as allowed by
law* shall not be impaired." The words "as allowed by
law" in that section have practically the same meaning
and effect as the words "now allowed" as used in the
section previously discussed. The adding of the words
"by law" did not add anything to the meaning. The
changing of the word "now" to "as" just before "al-
lowed" did not change the sense or the time intended,
because the question naturally is suggested, what law is
referred to? So the words, "as allowed by law" or "as
now allowed by law," refer to the law in effect and con-
trolling at the time the new section was adopted. Thus it
does not make any difference in the meaning of the law
whether the Legislature said, "now allowed" or "as al-
lowed by law" or "as now allowed by law." Each of
these expressions means substantially the same thing, with
relation to the subject of the statutory provision.

It will be noticed that in Section 5580, Wyo. Comp.
Stat. 1920, there was added (probably in 1886) the "coun-
ter claim" which the earlier code provisions did not con-
tain. That extended the scope of the statute and allows a
defendant payor a much wider latitude in his defense than

formerly was the case, and indicates an intention to protect such a debtor in every defense existing prior to notice
to him of the assignment. Some of the states do not allow
counter-claim to be set up under their statutes dealing
with this subject..

Prior to the adoption of the code in the different states
it was necessary for the assignee of a chose in action to
bring the suit in the name of the payee assignor named in
the instrument, and equity courts allowed the payor to
set off debts due him from the payee, incurred prior to
notice of the assignment. Cavendish v. Geaves, supra.
With the coming of the Code Procedure we see the abolition of fictitious parties and the combining of the law and
equity courts into one court, sometimes referred to as
"civil courts," and directing suits to be brought in the
name of the real party in interest.

During this period of our legal and statutory history
the legislatures attempted to embody in that portion of
the statute relating to set-off in case of an assignment the
law as it had been developed through years of equity
trials.

Pomeroy's Code Remedies, 4th edition, Section 84, reads
as follows:

"The section quoted above (referring to sections identical to our Section 33, Laws of 1869, and section 23, Laws
1873) and which is substantially the same in all the states,
does not change the then existing law as to defenses under
the circumstances mentioned in it. It is not intended to
alter the substantial rights of the parties, but only to introduce such modifications into the modes of protecting
them as were rendered necessary by the provisions of the
preceding section requiring the real party in interest in
most cases to be the plaintiff. Taking the two sections
together, the plain interpretation of them is: The assignee
of a thing in action must sue upon it in his own name, but
this change in the practice shall not work any alteration
of the actual rights of the parties; the defendants are still
entitled to the same defenses against the assignee who

sues which they would have had if the former rule had
continued to prevail, and the action had been brought in
the name of the assignor, but to no other or different de-
fenses.  In other words, the section must be interpreted as
though it read as follows: 'In the case of the assignment
of a thing in action, the action of the assignee shall be
without prejudice to any set-off or other defense existing
at the time of or before notice of the assignment, which
would have been available to the defendant had the action
been brought in the name of the assignor.'  This construc-
tion is now firmly and universally established."

And, in Section 85:

"As the pre-existing rule is thus reaffirmed, a full dis-
cussion of the statutory provision requires an examination
and statement of that rule itself.  In the first place, the
general doctrine is elementary that the purchaser of any
thing in action, not negotiable, takes the interest pur-
chased subject to all the defenses legal and equitable *of
the debtor who issued the obligation or security.*  That is,
when the original debtor, the obligor on the bond, or the
promisor, in whatever form his promise is made, if it is
not negotiable, is sued by the assignee, the defenses legal
and equitable which he had at the time of the assignment,
or at the time when notice of it was given, against the
original creditor, avail to him against the substituted cred-
itor.  This doctrine has been applied to all kinds of de-
fenses as well as to set-off, and to all forms of contract not
negotiable."

If the appellant's contention was correct, a debtor's
rights in defending against a suit by an assignee of a chose
in action, would be governed in this state by the amount
of money involved.  Then, if he should be sued in a Justice
Court he could set off money owed him by the assignor
before notice of the assignment, but if sued in District
Court he could not plead such a defense.  It might be in-
teresting to contemplate the results on appeal involving
actions brought in justice courts and others brought in
district courts if a different rule should prevail as to each.

Whether or not a school district warrant is a negotiable instrument need not be discussed further than to say it is in the same class as city warrants, and we have held that they are not negotiable instruments in the case of Petters & Co. v. Town of Rock River, 260 Pac. 674, decided this day. And we refer to that opinion for the law on that subject.

From what we have heretofore said, we find that: First: The school warrant is not a negotiable instrument. Second: The assignee acquires by reason of the assignment of the chose in action, no greater rights against the debtor than those of the assignor against the debtor, at the time of notice to him of the assignment. Third: The misappropriation by the Bank's officer of the funds of the school district, on deposit with the bank, after the assignment of the warrant to the plaintiff, and prior to defendant receiving notice thereof, was a proper set-off to be pleaded in its answer. Fourth: The question therefore, before the court as above stated should be answered in the affirmative.

It follows, that the action of the District Court setting aside the verdict of the jury in favor of the plaintiff and entering judgment in favor of the defendant should be affirmed.

*Affirmed.*

POTTER, Justice, and RINER, District Judge, concur.

### REHEARING DENIED

RINER, Justice.

A petition for rehearing has been filed by appellants. Before the opinion in this case was handed down, the court gave to the questions raised a most thorough and painstaking consideration. All cases were examined which could in any degree shed any light on the solution of these questions. The authorities cited in the petition for rehearing now before us were not overlooked. We can see no

good reason for departing from the decision as handed down, and, therefore, a rehearing is denied. It may be stated that Judge Potter, before his death, concurred in the view thus expressed.

*Rehearing Denied.*

KIMBALL, J., and METZ, District Judge, concur.