## UNIVERSAL CREDIT CO. v. NATIONAL RADIO MFG. CO.

No. 25482. Sept. 10, 1935.

Rehearing Denied Oct. 15, 1935.

Billups & Billups, for plaintiff in error.

George F. Short, Welcome D. Pierson, Charles Hill Johns, and Harold Thweatt, for defendant in error.

PER CURIAM. On the 7th day of October, 1932, the Parrott Auto Company was engaged in the sale of automobiles, and the National Radio Manufacturing Company was operating radio station KOMA at Oklahoma City. On that date the Parrott Auto Company sold a Ford automobile to the defendant, National Radio Manufacturing Company, for which it executed the usual form of conditional sales contract, with balance of the purchase price in the sum of $650 to be paid

on December 7, 1932. At the same time the Parrott Auto Company made a written agreement with the defendant for radio advertising in the amount of $650 "to be credited as full payment" for the automobile mentioned in the conditional sales contract. On October 18, 1932, the Parrott Auto Company sold and assigned this conditional sales contract to the Universal Credit Company for value and without any knowledge on the part of the purchaser of the separate written advertising agreement. The Parrott Auto Company having gone into bankruptcy, and no one having paid to the Universal Credit Company the money represented by the contract which it had discounted from the Parrott Auto Company, it brought suit in replevin against the radio company, claiming title to the car described in the conditional sales contract. A jury was waived, and upon trial judgment was rendered for defendant in the lower court, and the plaintiff has appealed to this court.

The sole question submitted by this appeal is whether the payment to the Parrott Auto Company by way of the separate radio advertising agreement referred to can be set up against the plaintiff as a holder of the conditional sales contract without notice and for value before maturity. In its brief the plaintiff concedes that the conditional sales contract is not a negotiable instrument but undertakes to create for itself by estoppel the position of an innocent purchaser—contending that when the defendant signed and put the conditional sales contract in circulation, it thereby occasioned the loss which occurred by reason of its assignment, and is least innocent as between itself and the plaintiff, and must, therefore, take the loss. This general rule of estoppel relied upon that when one of two innocent parties must suffer by the wrongful act of a third party the one who made possible the wrongful act must bear the loss, has been so many times repeated by all courts of last resort that it may be taken as a settled rule of law, and the authorities to maintain it will not even be cited. The question remains, Do the facts here come within that rule?

The case of Doub v. Rawson (Wash.) 252 P. 920, involved sale of automobile by conditional contract, separate agreement for payment in advertising, and assignment of the conditional contract for value without notice and before maturity. The assignee relied upon the same theory of estoppel as here. The Supreme Court of Washington said:

"Even if it should be conceded that Rawson was negligent in not inserting a clause in the conditional sales contract, it must also be admitted that the finance company was negligent in purchasing a nonnegotiable instrument without inquiry or investigation, when the slightest investigation would have revealed the fact that the advertising contract was in existence. Respondent argues that because it paid in full value without notice, it should be protected; but this is to grant the assignee of nonnegotiable paper the same rights that would be his were the paper negotiable."

In the case of Mercantile Trust Co. v. Roland, 143 Okla. 190, 288 P. 300, this court had before it the same question, but under slightly different facts, as in the case at bar. The court laid down the rule in the first syllabus of its opinion as follows:

"Where the assignee of a conditional sales contract and the notes therein referred to, such as in this case, brings a suit in replevin for the possession of property sold and described in the sales contract under claim of absolute title and ownership by virtue of the terms of such contract, wherein the title to the property sold is reserved in the seller until the full purchase price is paid, the defendant, the buyer, may and is entitled to set up any defense as against the claim and action of the assignee for possession to the same extent and manner as if the action had been brought by the assignor, the seller."

In the body of the opinion, the court extensively discussed the question of the negotiability of such an instrument and the theory of protection of a bona fide purchaser without notice, and entirely rejected both contentions as applied to such an instrument. See, also, American National Bank v. A. G. Somerville Inc., 191 Cal. 364, 216 P. 376; Pacific Acceptance Corporation v. Whalen, 43 Idaho 15, 248 P. 444.

It may be noted that the conditional sales contract sued upon meets the statutory (St. 1931, sec. 11483) requirement of a negotiable instrument in that it contained "an unconditional promise * * * to pay a sum certain in money * * * at a fixed * * * future time." However it will be further noted that, like all conditional sales contracts, it retained title to the automobile sold, with right of repossession in the seller. Plaintiff brought this action in replevin claiming absolute title to the automobile, and this constituted legal waiver of the stipulation in the instrument sued upon with respect to the payment of "a sum certain in money * * * at a fixed * * * future date," and any negotiable character which the instrument might otherwise have had was thereby lost. (See Galbreath v. Mayo, 70 Okla. 252, 174 P. 517; National Cash

Register Co. v. Stockyards Cash Market, 100 Okla. 150, 228 P. 778.)

The rule applicable to a negotiable instrument denying to the maker thereof his right to set up his defense (when he has one) as against a purchaser who has bought before maturity and without inquiry, when the truth would constitute a righteous defense to the paper, is a harsh rule which grows out of commercial necessity and is limited on the face of section 143, 1931 Okla. Stats., to "Negotiable bonds, promissory notes, or bills of exchange," and which statute further expressly excludes from the operation of that rule everything except the items above set out, and permits the setting up of defense against a purchaser who buys **without inquiry** an instrument like the one under consideration here. This section referred to is also followed by section 212 of the same statute, which "is like unto it," and provides that:

"When cross-demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim or set-off could have been set up, neither can be deprived of the benefit thereof by the assignment * * * of the other."

To give countenance to plaintiff's theory of estoppel would be in direct contravention of the two statutes above quoted from, and would, by construction, destroy the distinction between negotiable and nonnegotiable instruments. This distinction cannot be destroyed and the defenses to nonnegotiable paper cut off by the theory or circuitous route of estoppel, when the sole fact of estoppel is the execution of the nonnegotiable paper sued upon. The defendant radio company was not deprived of its defense of payment herein by reason of the assignment of the contract by the Parrott Auto Company to the plaintiff.

The judgment is affirmed.

The Supreme Court acknowledges the aid of District Judge E. A. Summers, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter, the opinion, as modified, was adopted by the court.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.